UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

FILED
CLERK, U.S. DISTRICT COURT

AUG 1 6 2024

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION     BY DEPUTY

ALONGE OLU VICTOR

v.        **ED CV 24 - 01755-KK (RAO)**

WARDEN FCI VICTORVILLE II

---

## EMERGENCY MOTION FOR RELIEF FROM UNCONSTITUTIONAL DETENTION AND IMMEDIATE TRANSFER TO RESIDENTIAL REENTRY CENTER OR HOME CONFINEMENT BASED ON EARNED FISRT STEP ACT CREDITS

---

Petitioner prays this humble petition is liberally construed and held to a "less stringent standard than those pleadings drafted by attorneys." **Haines v. Kerner, 404 U.S. 519, 520, 30 L.ed. 2d 652, 92 S.Ct 594 (1972); see also Fed. R. Civ. P. 8(e) ("pleadings shall be construed as to do justice.")**

Petitioner, pro se respectfully submits this emergency petition, requesting this Honorable Court to order the FCI Victorville II to immediately transfer Petitioner to RRC/HC pursuant to 18 U.S.C §3624(g)(1)(A) which mandates the Bureau of Prisons release an eligible inmate who has earned time credits in an amount to the remainder of his/her imposed term of imprisonment.

Petitioner states that he has earned ETC that exceeds the remainder of his sentence pursuant to § 3624(g) and as such, his further detention by the BOP in unlawful and violates federal constitutional protections and liberty interest.

1.                    **BACKGROUND**

Petitioner was sentenced to 120 months on October 30, 2019, with a projected release date of October 6, 2026. Petitioner has maintained a minimum recidivism risk through out the course of his incarceration, diligently participating in programming and activities through which he has earned sufficient FSA credits to qualify for release in accordance with the FSA Act.

2. With respect to adminsitrative exhaustion, Petitioner respectfully pleads the futility doctrine adopted by the Supreme Court which recognizes "three broad sets of circumstances in which the interests of the individual weigh heavily against requiring

1

administrative exhaustion. **"McCarthy v. Madigan, 503 U.S. 140, 117 L.Ed 291, 112 S.Ct. 1081, at *144-45(U.S.1992); Campbell v. Chadbourne, 505 F.Supp. 2d 191, 2007 U.S. Dist. LEXIS 65150(D.Mass. 2007) 197-198.**

They include:

(1) Where such requirement would subject an individual to an unreasonable or indefinite time-frame for administrative action.

(2) Where administrative agency lacks the competence to resolve the particular issue presened, or

(3) The exhaustion of administrative remedies would be futile because the administrative body is shown to be biased or has predetermined the issue before it. **Barron v. Ashcroft, 358 F.3d 674, 677(9th Cir.2004) (citing McCarthy v. Madigan, 503 U.S. 140, 144, 122 S.Ct 1081, 117 L.Ed. 2d 291(1992)).** Here in this instant emergency petition, all three circumstances apply.

Most recently, in the context of the First Step Act, see e.g., **Goodman v. Ortizs, 2020 WL 5015613(D.N.J.Aug.25,2020) ("the Court found that exhaustion requirement would be futile where the BOP's preferred construction of the FSA barring the reward of ETC was contrary to the statutory language");** Arellano-Ortiz v. Quintana, 2024 U.S. Dist. LEXIS 3228, Case No. 2:23-06290-ADS, at *6-7(C.D. Cal.Jan.5,2024) **("Courts have discretion to waive the exhaustion requirement where pursuing administrative remedies would be futile, the administrative remedies are inadequate or not efficacious, irreparable injury would result, or the administrative proceedings would be void").**

**Hare v. Ortiz, No. 20-14093, 2021 WL 391280(D.N.J.feb.4,2021)** (invoking the principle that exhaustion was not required because the case presented "a narrow dispute of statutory construction" where the Petitioner sought review of BOP's determination of eligibility for ETC's and had failed to exhaust his administrative remedies).

Petitioner avers that attempting to exhaust administrative remedies would take between 120 days or more, which is to the detriment of his liberty interest as he has already earned ETC more than the remainder of his sentence.

3.                    STATEMENT OF CASE

Petitioner was eligible for release in since April, 2024, based on his accrued FSA ETC and six months mandate of SCA pursuant to Second Chance Reauthorization Act, as expanded by § 3624(g) of the FSA which now makes clear a detainer does not preclude an inmate RRC/HC. On April 8, 2024, Petitioner's case manager (Bonilla) informed Petitioner that a notice/memo was received on Petitioner's behalf, from the BOP's Attorney's Office in Los Angeles, specifically to effect Petitioner's release but rather than effect Petitioner's immediate release, Petitioner was told to sign papers for release to RRC/HC on April 28, 2024. **See Appendix A.**

Petitioner was already due for release at the time but was informed the administration needed additional 60 days to process him to RRC/ HC in spite of what is now an unlawful detention. As a result, the BOP has deliberately caused an undue delay and hardship by unlawfully detaining Petitioner for over over 120 days beyond his release and which constitutes unlawful restraint of Petitioner's freedom, thereby violating his constitutional rights.

On May 18, 2024, Petitioner met with Case Management Coordinator (CMC) (Brittany Ocegueda) who informed Petitioner's release packet required additional 30 days at the records office, further delaying Petitioner's release unlawfully. After a month passed, Petitioner again met with the CMC and she repeated the same story she informed over a month. Having now accrued FSA ETC in excess of the remainder of imposed sentence without the SCA mandate of the greater of six months or 10 percent of imposed sentence pursuant to § 3624(c)(1), On August 7, 2024, Petitioner visited the records office to inquire about the delay in his release and unlawful detention and officer A.Hatt of the records office informed Petitioner they did not process Petitioner's release because of his detainer. The assertion is however contrary to the FSA mandate, this Honorable Court's ruling on the subject of detainer and also contradicts BOP's own admission in **Garcia-Duenas v. Martinez, 2023 U.S. Dist. LEXIS 234250, at \*4 (W.D.La.Dec.28,2023)** BOP stating **"As of February 6, 2023, detainers are no longer considered disqualifying").**

**While the California Court was one of the first Courts in the Country** to hold that a detainer does not preclude application of

FSA ETC. **See Jones v. Engleman, 2022 U.S. Dist. LEXIS 185635, at *34-35(C.D.Cal.Sept7,2022).** The Judge expressed the FSA's pertinent framework succinctly, in rejecting the BOP's assertion that it had the discretion to exclude a prisoner from having his ETC applied.

> "the language of the FSA shows that Congress made a conscious chioce to do three things, One, by its use of **"SHALL BE APPLIED"** and **"SHALL TRANSFER"** language in §3632(d)(4)(c), Congress made the application of time credits...mandatory for prisoners "eligible" under §3624(g). Two, by **Section 3624(g)**, Congress spelled out the prerequisites for a prisoner to be "eligible", and do not contemplate any additional criteria or precondition...Third, Congress explicitly determined which prisoner's are "ineligible" to have FSA applied to them.

It is infact appalling that over two years after this ruling and several others from sister circuits, including the BOP's own memo to this effect, - **See Appendix B -** the BOP is still flagrantly under-mining the Congressional intent and mandate of the FSA.

4.                              **CONGRESSIONAL INTENT**

The Congressional Intent behind the FSA was to address the issue of Mass-Incarceration and reducing unnecessary cost associated with incarceration by emphasizing on the importance of providing inmates with Evidence-Based Recidivism Reduction programs aimed at rehabili-ting inmates and incentivizing the inmates for engaging in such programs. **Public Law No. 115-391; H.R.5682.**

But the BOP's action since the enactment of the FSA has been contradictory to the FSA intent. Petitioner avers that the BOP has consistently engaged in a pattern of **UNLAWFULLY DENYING** eligible their ETC by holding them indefinitely beyond their release dates, especially inmates like Petitioner with ICE detainers, with hope that they get a final removal order so to prevent the application of already accrued ETC. **See e.g., Arellano—Ortiz v. Quintana, 2024 U.S. Dist. LEXIS 1404(C.D.Cal.Jan.3,2024).** The Petitioner in that case was unlawfully denied release beyond his release date so that DHS could serve him a final removal order so to render him ineligible to apply his ETC. The same in **Jesus Lerma-Jaras v. Brain Birkholtz, 2023 U.S. Dist. LEXIS 219221; Case No. 2-23-cv-09427-ODW(JDE) (C.D.Cal.Dec.8,2023)** also from this district. Eventhough these cases were recently decided in this very district, the BOP has continued

---

In Arellano-Ortiz which involved the same FCI Victorville, Honorable Judge Autumn D. Spaeth ordered immediate release of the inmate.

to disregard and flout the Courts ruling by unlawfully subjecting other inamtes to unlawful detention beyond their release. **See e.g., Mohamed Chekchekani,** an inmate whom the BOP refused to release even after earning FSA credits exceeding the remainder of his sentence. Instead, the BOP transferred him to a different facility. This unlawful practise and repeated flouting of the law by FCI Victorville has deprived hundreds of inmates their ETC and circumvents the Congressional Intent of the FSA which sought to reduce prison popula- tion by providing inmates with the opportunity for early release. The BOP's actions not only undermines the spirit of the law but also violates Petitioner's Eight and Fourteenth Amenments rights as it constitutes undue and unlawful detention and deprivation of liberty.

5. This flagrant abuse by the BOP, holding inmates beyond their release date so to encourage DHS to enter a final removal order so to preclude application of an inmate's already accrued ETC is not only a corrupt practice but also violates **EX Post Facto.** See **Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed. 2d 17(1981) (Holding that the State violated the Ex Post Facto when it applied to a prisoner, new conditions that prevented application of already earned time credits); Lynce v. Mathis, 519 U.S. 433, 117 S.Ct. 891, 137 L.Ed. 2d 63(1997) (same).**

6. Petitioner seeks an order for BOP to immediately release him. Several Courts have issued such orders to the BOP to release inmates within and outside this Circuit. See e.g., **U.S v. Hoskins, No.3:01- CR-00266, 2018 U.S. Dist. LEXIS 56466(M.D.Pa.Apr.3,2018); U.S v. Bhamani, No.2:10-CR-00327-TLN, 2017 U.S. Dist. LEXIS 109902, 2017 WL 2992455(E.D.Cal.July.13,2017); U.S. Hoffman, 2018 U.S. Dist. LEXIS 213936(E.D.Cal.Dec.19,2018); U.S v. Quadri, No.CR-06-00469-LEK, 2017 U.S. Dist. LEXIS 38716, 2017 WL 1011663(D.Haw.Mar.15,2017); U.S v. Benjamin Bolton, 2023 U.S. Dist. LEXIS 154554(W.D.N.Y.Aug.31,2023) (All ordering the BOP to transfer inmates to RRC/HC); See also Woodley v. Warden, USP Leavenworth, 24-3035-JWL (US District Court, District of Kansas, May.15,2024) ("Court ordering immediate release to Home Confinement after a briefing on expedited basis"); Ramirez v. Phillips 2023 WL 8878993, at *4(E.D.Cal.Dec.22,2023) (agreeing with FSA inter- pretation that transfer to prerelease custody is mandatory, BOP has no discretion not to transfer).**

In Goodman v. Ortiz, 2020 U.S. Dist. LEXIS 153874, 2020 WL 5015613(D.N.J.Aug.25,2020) and O'Bryan v. Cox No.4:20-cv-04183 LLP, 2021 U.S. Dist. LEXIS 50055, 2021 WL 97792(D.S.D2021) the Courts in those cases held that the BOP's decision to not award the inamtes their ETC was **both unfair and at odds with the purpose of the FSA,** the same is true for Petitioner who has actively engaged in EBRR and PA to ensure his early release and has now accrued credits in excess of the remainder of his sentence.

Petitioner is a model inmate and without a single infraction in the course of his incarceration. **see Bureau of Prison's Staff Letters on behalf of Petitioner.** Petitioner has diligently, dedicated his time to rehabilitation by engaging in a plethora of Evidence-Based Recidivism programs and Productive Activities initiated by the BOP. These programs are focused on rehabilitation and has been proven by empirical evidence to reduce recidivism, based on research indicating that these programs are effective in reducing recidivism, also ensuring prisoners succeed in their communities upon release from prison. **See 18 U.S.C § 3635(3)(A), but yet, the BOP attempts to undercut** Petitioner's rehabilitative incentives.

Petitioner has not only been a model inmate but has selflessly dedicated his time to assisting several inmates with legal needs and in 2023, Petitioner authored the briefs of Austen Yufenyuy which is now a legal precedent and ensures inmates begin to earn their FSA ETC on the day their sentence commence. **See Yufenyuy v. Warden FCi Berlin, No.22-cv-443-AJ(Mar.3.2023(New Hampshire**

7.                          **IN PARI METERIA**

In pari Materia as a legal doctrine dealing with the same subject subject matter and mandating they must be read together and interpreted harmoniously means that Petitioner should have been released even long before now in light of the Second Chance Act as both the Second Chance ACt (SCA) and FSA aim to improve reentry outcomes and reduce recidivism by easing transition from imprisonment to community life.

> "Tenets of statutory construction provide
> that whenever a legislative body enacts a
> statute, it has in mind previous statutes
> relating to the **same subject matter.** The new
> provision is presumed to be in accord with
> the legislative policy embodied in prior
> statutes and all statutes should be
> construed together." **Colorado v. U.S. Dep't
> of Army, 707 F.Supp. 1562; 1989 U.S. Dist.
> LEXIS 1902(D.Col.Feb.24,1989); 2A Sutherland
> Statutory Construction §51.02 (Sands 4th Ed.))**

Under well-recognized rules, all acts of Congress touching same
subject, whether passed at the same or difference sessions are to
be read in harmony and as if all were parts of the same law. **See
Brace v. Solner, 1901 U.S. Dist. LEXIS 433; 1 Alaska 361 No. 599
at \*11(Dec.17,1901) (Such statutes are taken together and construed
as one system, and the object is to carry into effect the
intention.)**

The FSA specifically expanded the SCA, introducing new
mechanisms for earning credits towards pre-release custody which
reflects the Congressional intent to facilitate increased pre-
release custody opportunities, also specifically making clear that
**a detainer does not preclude an eligible inmate from RRC/HC** and
the BOP's preclusion of additional SCA RRC/HC placement
(10 percentum or 6 months) violates In pari Materia. See legislative
intent as amended in **§ 3624(c)(2) of Second Chance Reauthorization
Act**, and as added in **§ 3624(g) of the FSA**, both enacted in December
2018, which clearly evince that a prisoner for whom a detainer has
been lodged--is not precluded from additional RRC/HC placement.
**ID § 3624(c)(2); § 3624(g) (\*2) f.note**

Amendments are to be construed together with the original act
to which they relate as constituting one law, and also together
with statutes on the same subject, as part of coherent system of
legislation...so to give effect to each; and leave no clause of
either inoperative. **U.S v. Hardcastle, 1942 U.S. Dist. LEXIS
3467(9th Cir.May 2,1942).** In light of In pari Materia, Petitioner
ought to have been released from custody many months before the
filing of this emergency petition.

Both the SCA and the FSA were both enacted with the intent of improving reentry outcome and reducing recidivism by easing transition from prison to community life. Especially the SCA was reauthorized as part of the FSA, implementing EBRR and PA programs allowing inmates to earn additional credits towards early release.

Since the FSA which expanded SCA provides clarification that a detainer does not preclude a prisoner from RRC/HC placement, then reading the statutes **in pari materia** clearly suggest this clarification should inform the application of the SCA, ensuring a harmonious interpretation promoting reentry of prisoners. Furthermore, if the FSA's purpose is to further enhance opportunities for reentry success, it stands to reason that favorable interpretation of eligibility for RRC/HC placement, which is a critical component of reentry should prevail as both Acts share similar goals and subject and must be read **in pari materia**, providing cummulative benefits allowing for the additional 10 percentum of imposed sentence or six months in RRC/HC placement pursuant to § 3624(c)(1), together with FSA ETC.

It is of paramount importance to note that through the last 15 years, Congress has made meaningful adjustments to subsection 3624(c), and in particular to subsection 3624(c) as follows:

First, on April 9, 2008, in light of SCA, Congress substituted subsection (c) for one which read:

> --3624(c) "Prerelease custody: The BOP shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spend a reasonable part, not to six months or the last 10 percentum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's reentry into the community."

Subsequently, on December 21, 2018, in light of the FSA, Congress expanded the SCA by adding subsection 3624(c)(2) exclusively for the pupose of the Home Confinement authority, to provide:

> --3624(c) "Home Confinement authority: The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percentum of the term of imprisonment of that prisoner or six months. The

The BOP **"SHALL"** to the extent practicable, place
prisoners with **lower risk levels and lower needs** on
Home Confinement for the maximum amount of time
permitted under this paragraph."

Notably, in 3624((c)(2), Congress unambiguously mandated the
BOP by the word **"SHALL"** to home confinement for either remaining
six months of their sentence of 10 percent of the term of
imprisonment, not to exceed 12 months. Borrowing an example prior
to 2018, **see Galaviz v. Zenk, 2007 U.S. Dist. LEXIS 64831(N.D.
Ga.June 25,2007).**

It would defy basic canon of statutory interpretation that
similar words appearing in **"neighboring provisions"** of the same
statute generally should be interpreted to have the same meaning.
"To apply one standard under the Second Chance Act Reauthorization
Act Act and to apply a different standard under the First Step
Act would be inconsistent." **See Antonin Scalia & Bryan A. Garner,
Reading Law: The interpretation of the Legal Text 170(2012)**
(presumption of consistent usage); see also **Peraira v. Sessions,
138 S.Ct. 2105, 2114, 201 L.Ed 433(2018) ("looking to a neighboring
statutory provision for contextual support.")** In line with this,
the BOP has granted inmates without detainers additional credits
with their FSA ETC towards early release and its preclusion in
this case violates Equal Protection of the constitution. The
records officer A.Hatt specifically told Petitioner that FCI
Victorville has never processed an inmate with detainer to RRC/HC
in spite of BOP's own memo **-Appendix B- which states contrary.**

The FCI Victorville's assertion herein is inconsistent with
**"Congressional Intent"** as articulated in 18 USC 3624(c)(2) and
3624(g), which the later has now been proven by this Honorable
Court and BOP's memo that a prisoner -- to whom a detainer has
been lodged--is not precluded from additional credits towards
RRC/HC. This means that Petitioner should have been released from
custody in November, 2023 had the 12 months being 10 percent of
his sentence been applied towards his accrued FSA ETC which was
695. Or released in April 2023, had the six months which is the

lesser been applied with his FSA ETC.

8.                              **RELIEF SOUGHT**

Petitioner prays that this Honorable Court grant this petition

1. Order the FCI Victorville II to immediately release Petitioner from his unlawful detention.

2. Order an expedited briefing via **telephonic or video conference** which FCI Victorville II is equipped with

3. Order FCI Victorville II to issue Petitioner a copy of the Release Memo/Notice from the BOP's Attorney Office in 535 N. Alameda Street, Los Angeles, CA 90012 specifically to enable the Immigration Judge who requested the document transfer his case to Georgia where Petitioner will be released to.

4. In light of BOP's unlawful actions resulting to unlawful detention of Petitioner and the BOP's repeated flouting of FSA and Courts rulings across the country, Petitioner is requesting the Court order the BOP to provide financial compensation for each day of his unlawful detention at the rate of $1,500 (One Thousand Five Hundred Dollars) daily from April 8, 2024 to August 12,2024 which is subject to increments of $1,500 daily until Petitioner is released.

5. Grant such other and further relief as the Court deems just and equitable in its wisdom.

9.                              **CONCLUSION**

In the interest of justice and fairness, Petitioner respectfully prays this Honorable Court GRANT this petition so to enforce his constitution rights and prevent further abuse of the FSA credit system.

Petitioner appreciates the Court's urgent attention to this matter.

                              Respectfully submitted,
                              Alonge Olu Victor

# EXHIBIT A

Please see last page, indicating the date I signed papers
to effect my release, when I ought to be immediately released.



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
USPC Pre-Release Report for inmate: ALONGE, OLU VICTOR  71545-019

**SEQUENCE: 00447183**
**Report Date: 04-28-2024**



| | |
|---|---|
| Facility: | VVM  VICTORVILLE MED II |
| Name: | ALONGE, OLU VICTOR |
| Register No.: | **71545-019** |
| Quarters: | A01-107UH |
| Age: | 40 |
| Date of Birth: | 12-03-1983 |

| | |
|---|---|
| Custody Level: | IN |
| Security Level: | LOW |
| Proj. Rel Date: | 10-06-2026 |
| Release Method: | GOOD |
| DNA Status: | ATL14733 / 12-20-2019 |

### Offenses and Sentences Imposed

| Charge | Terms In Effect |
|---|---|
| 18:1343 AND 2 WIRE FRAUD | 120 MONTHS |

Date Sentence Computation Began:    10-30-2019
Sentencing District:    GEORGIA, NORTHERN

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit  - InOp Time |
|---|---|---|---|
| 0 /    0 /    0 | 324 | Years: 6 Months: 0 Days: 30 | + 579    JC - 0    InOp |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| ICE | THE ALIEN EITHER LACKS IMMIGRATION STATUS IS REMOVABLE UNDER U.S. IMMIGRATION LAW A207 746 816 |

### Program Plans

Inmate ALONGE arrived at FCI II Victorville on January 19, 2024.  At his initial classification, inmate ALONGE was recommended to enroll in English as a Second Language (ESL) and participate in the NA/AA class. He was encouraged to satisfy his court-imposed financial obligations through participation in the inmate Financial Responsibility Program and maintain clear conduct. Inmate ALONGE is ineligible to participate in the Release Preparation Program (RPP) due to his immigration status. He was also encouraged to enroll in the Money Smart course in order to assist with his release and financial obligations.

### Current FSA Assignments

| Assignment | Description | Start |
|---|---|---|
| AWARD | EBRR INCENTIVE AWARD | 10-05-2023 |
| FTC ELIG | FTC-ELIGIBLE - REVIEWED | 02-14-2024 |
| N-ANGER N | NEED - ANGER/HOSTILITY NO | 02-18-2024 |
| N-ANTISO N | NEED - ANTISOCIAL PEERS NO | 02-18-2024 |
| N-COGNTV N | NEED - COGNITIONS NO | 02-18-2024 |
| N-DYSLEX N | NEED - DYSLEXIA NO | 04-13-2022 |
| N-EDUC Y | NEED - EDUCATION YES | 02-18-2024 |
| N-FIN PV Y | NEED - FINANCE/POVERTY YES | 02-18-2024 |
| N-FM/PAR Y | NEED - FAMILY/PARENTING YES | 02-18-2024 |
| N-M HLTH N | NEED - MENTAL HEALTH NO | 02-18-2024 |
| N-MEDICL N | NEED - MEDICAL NO | 02-18-2024 |
| N-RLF N | NEED - REC/LEISURE/FITNESS NO | 02-18-2024 |
| N-SUB AB N | NEED - SUBSTANCE ABUSE NO | 02-18-2024 |
| N-TRAUMA N | NEED - TRAUMA NO | 02-18-2024 |
| N-WORK Y | NEED - WORK YES | 02-18-2024 |
| R-LW | LOW RISK RECIDIVISM LEVEL | 02-18-2024 |

### FSA Comments

| |
|---|
| See Above |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| VVM | A&O COMP | A&O COMPLETE | 02-29-2024 |

### Work Assignment Summary



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
USPC Pre-Release Report for inmate: ALONGE, OLU VICTOR  71545-019

SEQUENCE: 00447183
Report Date: 04-28-2024

Inmate ALONGE has not obtain a work detail since his arrival at FCI-II Victorville.

### Current Education Information

| Facl | Assignment | Description | Start |
|------|-----------|-------------|-------|
| VVM | ESL HAS | ENGLISH PROFICIENT | 09-11-2020 |
| VVM | GED XN | EXEMPT GED NON-PROMOTABLE | 09-11-2020 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---------|--------|-------------|-------|------|
| VVM | C | BEGINNING ORAGAMI | 02-07-2024 | 04-17-2024 |
| BER | C | BEGINNER'S CERAMICS | 04-17-2023 | 04-17-2023 |
| BER | C | BEGINNER'S CERAMICS | 04-17-2023 | 05-13-2023 |
| RVS | C | LIFE SKILLS ART | 07-12-2021 | 08-04-2021 |
| RVS | C | WORKING OUT ON THE UNIT | 11-09-2021 | 11-09-2021 |
| RVS | C | COLLEGE CORRESPOND COURSE | 07-05-2021 | 07-20-2021 |
| DRJ | C | A&O PREA COMP.EDU.CLASS TU 10A | 01-13-2020 | 01-13-2020 |

### Education Information Summary

Inmate ALONGE is currently exempt from the GED program at FCI II Victorville.  He has been recommended to sign up for the Pre-GED in order to help his ability to obtain a job.

### Discipline Reports

| Hearing Date | Prohibited Acts |
|--------------|-----------------|

*** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ***

### Discipline Summary

**NO INCIDENTS REPORT FOUND IN THE LAST 6 MONTHS**

### ARS Assignments

| Facl | Assignment | Reason | Start | Stop |
|------|-----------|--------|-------|------|
| VVM | A-DES | TRANSFER RECEIVED | 01-19-2024 | CURRENT |
| BER | A-DES | TRANSFER RECEIVED | 04-06-2022 | 12-21-2023 |
| RVS | A-DES | TRANSFER RECEIVED | 08-20-2020 | 04-06-2022 |
| DRJ | A-DES | US DISTRICT COURT COMMITMENT | 01-07-2020 | 08-20-2020 |

### Current Care Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 04-12-2022 |
| CARE1-MH | CARE1-MENTAL HEALTH | 04-11-2022 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| LOWER BUNK | LOWER BUNK REQUIRED | 09-05-2023 |
| NO PAPER | NO PAPER MEDICAL RECORD | 03-21-2024 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 09-09-2020 |
| SOFT SHOES | SOFT SHOES ONLY | 09-05-2023 |
| YES F/S | CLEARED FOR FOOD SERVICE | 09-09-2020 |

### Current PTP Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| RSW COMP | RESOLVE WORKSHOP COMPLETED | 08-26-2022 |

### Current Drug Assignments

| Assignment | Description | Start |
|------------|-------------|-------|
| ED COMP | DRUG EDUCATION COMPLETE | 12-14-2022 |
| ED NONE | DRUG EDUCATION NONE | 02-14-2024 |
| NR COMP | NRES DRUG TMT/COMPLETE | 04-26-2023 |

### Physical and Mental Health Summary



### Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
USPC Pre-Release Report for inmate: ALONGE, OLU VICTOR 71545-019

SEQUENCE: 00447183
Report Date: 04-28-2024

Inmate ALONGE is on regular duty medical status with no restrictions. Psychology staff has not expressed any mental health concerns at this time.

## FRP Payment Plan

Most Recent Payment Plan

| FRP Assignment: | EXEMPT | FINANC RESP-TEMPORARILY | Start: 12-26-2023 |
|---|---|---|---|

Inmate Decision: **AGREED '**  $165.00  Frequency: **MONTHLY**
Payments past 6 months:  **$0.00**  Obligation Balance: **$1,835,199.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 2 | REST FV | $1,835,279.00 | $1,835,199.00 | IMMEDIATE | WAIT PLAN |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |

## Financial Responsibility Summary

At the time of sentencing inmate ALONGE was ordered to pay a $100.00 felony assessment. He has agreed to make monthly payments towards these obligations through participating in the Inmate Financial Responsibility Program.  Any outstanding balances that remain at the time of his release will be paid at the direction of the United States Probation Office (USPO).

## Release Planning

Inmate ALONGE plans on residing with his partner in Atlanta, Georgia. Inmate has no supervision to follow.

## General Comments

In preparation for release inmate ALONGE has been informed of his immigration status, any pending detainers or charges and was recommended to have a photo identification (I.D.), in his possession before departing to his home country.  Additionally, inmate ALONGE has been recommended to complete the Money Smart class to educate him on managing his finances and banking relationship upon release and to save money for release date.



**Summary Reentry Plan - Progress Report**

Dept. of Justice / Federal Bureau of Prisons
USPC Pre-Release Report for inmate: ALONGE, OLU VICTOR  71545-019

SEQUENCE: 00447183
Report Date: 04-28-2024

Name:  ALONGE, OLU VICTOR
Register Num:  **71545-019**
Age:  40
Date of Birth:  12-03-1983
DNA Status:  ATL14733 / 12-20-2019

Inmate    (ALONGE, OLU VICTOR, Register Num: 71545-019)

04 28 2024
Date

Chairperson

04-28-2024
Date

Case Manager

04-28-2024
Date

# EXHIBIT B

Burea of prison's own memorandum indicating a detainer no
longer precludes RRC/HC placement.

Inmate Message – Application of Federal Time Credits toward RRC/HC for Individuals
with Unresolved Pending Charges

Under the First Step Act, individuals with Minimum or Low Recidivism Risk Level and have
earned Federal Time Credits greater than the 365 days applied to early transfer to Supervised
Release are eligible to apply those additional credits toward halfway house and/or home
confinement regardless of their detainer status and/or unresolved pending charges.  This
benefit also applies to non-U.S. citizens as long as they have not received a final order of
deportation or removal.

Over the next several weeks, unit teams will begin the process of referring these individuals for
pre-release placement.  Prior to completing the referrals, Correctional Systems will also be
verifying the current status of any detainer and/or unresolved pending charges.

It is important to understand that while we will begin the process of referring individuals to
halfway house and/or home confinement, placement in the community does NOT eliminate the
outstanding detainers and/or pending charges.  **Meaning - if you are in halfway house and/or
home confinement and have detainers and/or pending charges, you are at significantly higher
risk to be arrested due to active warrants, and an arrest will result in a technical escape for
you and an interruption in your federal sentence as the Bureau will have lost primary
jurisdiction.**

Because this referral is based strictly the FSA time credits and not a needs-based Second
Chance Act recommendation, you can voluntarily choose not to participate in the FSA
placement.  Further, as the placement is voluntary, choosing not to participate will have no
impact on the Federal Time Credits applied toward your early release.

If you wish to not participate in a community prerelease placement due to detainers and/or
unresolved pending charges and increased risk of arrest, please submit an Inmate Request to
Staff Member to your Unit Team right away.

ALONGE, OLU  71545019

# EXHIBIT C

Bureau of Prison's Staff Letters in my support, attesting
to my rehabilitation.



**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

Federal Correctional Institution

---

*P.O. Box 69*
*Berlin, NH 03570*

October 14, 2023

SUBJECT:        Character Reference for Alonge, Olu Victor #71545-019

To whom it may concern,

  I am writing this character reference for Mr. Alonge, Olu Victor, who has been under our supervision here at FCI Berlin. As a recreation specialist, I observe behaviors and characteristics of inmates on a day-to day basis, as well as talking to them, getting to know them, and building a rapport with them.

  Throughout the past year I have hired Mr. Alonge on my work detail in recreation, where he performs what needs to be done and is willing to do whatever task is needed, always with a great attitude and no complaints. He has always attended the recreational programs and classes we have offered and have placed him in.

  I believe Mr. Alonge to be a model inmate, very respectful towards staff, and possesses a great attitude with moral character. I also believe Mr. Alonge has the qualities to make positive contributions to his community and family.

Thank you for your time and consideration.

Sincerely,
Recreation Specialist
D. Enman
*D. Enman*



**U.S. DEPARTMENT OF JUSTICE**

Federal Bureau of Prisons

Federal Correctional Institution

_____

*P.O. Box 69*
*Berlin, NH 03570*

October 29, 2023

SUBJECT:                Character Reference for Alonge, Olu Victor #71545-019


To whom it may concern,

    I, Recreation Specialist B. Sowers am writing this character reference for Mr. Alonge, Olu Victor. Mr. Alonge has been under our supervision here at FCI Berlin. Since Alonge has been here I have never witnessed or heard of him getting into trouble nor any disrespect towards staff or inmates. Mr. Alonge greets myself and my colleagues every time he crosses our paths, he shows us a great deal of respect.

    I have hired Mr. Alonge on my work detail in recreation, then transferred him to my colleagues works detail. Alonge takes the initiative and performs his work duties without asking staff what needs to be done. Mr. Alonge is a hard worker and is willing to do whatever task is needed, always with a great attitude and no complaints.

    I believe Mr. Alonge to be a model inmate, very respectful towards staff, and possesses a great attitude with moral character. I also believe Mr. Alonge has the qualities to make positive contributions to his community and family.


Sincerely,
Recreation Specialist
B. Sowers

# EXHIBIT D

Although the BOP's document quote Petitioner's FSA ETC as
765 days excluding August 2024, Petitioner avers he has
infact earned 800 days which excludes additional 6-12 months
mandated by the FSA which expanded the SCA.

Below is a Chronological Breakdown of Petitioner's ETC:

**2019:** Sentence commenced October 30, 2019. Pursuant to Yufenyuy
v. Warden FCI Berlin, No.22-cv-443, 2023 US Dist LEXIS 40186(D.N.H.
Mar.7,2023) A case authored by Petitioner; See also HuiHui v. Derr,
case No.22-00541, 2023 US Dist LEXIS 106532(D.Hawaii,June 20,
2023); Patel v. Barron, case No.23-937, 2023 US DIST LEXIS 174601
(W.D.wash.Sept 28,2023) (All ruling an inmate begins to ear ETC
when his sentence commence,) Petitioner earned **20 days** in 2019.

**2020:** Petitioner earned 10 days for the first 2 teams and earned
15 days each for other six months, totalling **150 days.** Two team
copies enclosed

**2021:** Petitioner earned **180 days**

**2022:** Petitioner earned **180 days**

**2023:** Petitioner was on FRP Refuse from December 13 to December
26 and as such earned **165 days** assuming he was penalized for the
entirety of the month

**2024:** Petitioner has earned **105 days excluding August. This
equals an aggregate of** 800 days.

**As of April 2024, when the BOP US Attorney Office issued the
Notice/Memo to FCI Victorville** for Petitioner's release,
Petitioner had already accrued **735 days** and should have been
released immediately with the six months mandate of the SCA or
been released in November 2023 had Petitioner been granted 1
year but Petitioner has been wrongfully deprieved of the SCA
mandate afforded to inmates without detainer and has also now
been detained beyond his release with the FSA ETC he has earned.

## FSA Time Credit Assessment

Register Number:71545-019, Last Name:ALONGE

**U.S. DEPARTMENT OF JUSTICE**                          **FEDERAL BUREAU OF PRISONS**

| | |
|---|---|
| Register Number....: 71545-019 | Responsible Facility: VVM |
| Inmate Name | Assessment Date.....: 07-30-2024 |
|   Last.............: ALONGE | Period Start/Stop...: 01-07-2020 to 07-30-2024 |
|   First............: OLU | Accrued Pgm Days....: 1604 |
|   Middle...........: VICTOR | Disallowed Pgm Days.: 62 |
|   Suffix...........: | FTC Towards RRC/HC..: 765 |
| Gender.............: MALE | FTC Towards Release.: 0 |
| Start Incarceration: 10-30-2019 | Apply FTC to Release: No |

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 01-07-2020 | 08-02-2020 | accrue | 208 |

  Accrued Pgm Days...: 208
  Carry Over Pgm Days: 0
  Time Credit Factor.: 10
  Time Credits.......: 60

----------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 08-02-2020 | 09-26-2020 | accrue | 55 |

  Accrued Pgm Days...: 55
  Carry Over Pgm Days: 28
  Time Credit Factor.: 15
  Time Credits.......: 30

----------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 09-26-2020 | 10-22-2020 | disallow | 26 |

  **In SHU**

| Facility | Category | Assignment | Start | | Stop | |
|---|---|---|---|---|---|---|
| RVS | QTR | Z01-315UDS | 09-26-2020 | 1542 | 10-17-2020 | 1104 |
| RVS | QTR | Z01-316LDS | 10-17-2020 | 1104 | 10-21-2020 | 1738 |

----------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 10-22-2020 | 12-13-2023 | accrue | 1147 |

  Accrued Pgm Days...: 1147
  Carry Over Pgm Days: 23
  Time Credit Factor.: 15
  Time Credits.......: 585

----------------------------------------------------------------------

| Start | Stop | Pgm Status | Pgm Days |
|---|---|---|---|
| 12-13-2023 | 01-18-2024 | disallow | 36 |

  **Not in qualifying admit status**

| Facility | Category | Assignment | Start | | Stop |
|---|---|---|---|---|---|

## FSA Time Credit Assessment

Register Number:71545-019, Last Name:ALONGE

**U.S. DEPARTMENT OF JUSTICE**                                    **FEDERAL BUREAU OF PRISONS**

```
   BER      ARS      TRANSFER     12-21-2023 0427   12-21-2023 0427
   B01      ARS      A-ADMIT      12-21-2023 0427   12-21-2023 1000
   B01      ARS      RELEASE      12-21-2023 1000   12-21-2023 1000
   DEV      ARS      A-BOP HLD    12-21-2023 1000   12-22-2023 0718
   DEV      ARS      HLD REMOVE   12-22-2023 0718   12-22-2023 0718
   B10      ARS      A-ADMIT      12-22-2023 0718   12-22-2023 1902
   B10      ARS      RELEASE      12-22-2023 1902   12-22-2023 1902
   BRO      ARS      A-BOP HLD    12-22-2023 1902   01-17-2024 0358
   BRO      ARS      HLD REMOVE   01-17-2024 0358   01-17-2024 0358
   B10      ARS      A-ADMIT      01-17-2024 0358   01-17-2024 1900
   OKL      ARS      A-BOP HLD    01-17-2024 1800   01-19-2024 0730
   B10      ARS      RELEASE      01-17-2024 1900   01-17-2024 1900
```

**In FRP refuse status**

| Facility | Category | Assignment | Start | | Stop | |
|----------|----------|------------|-------|--|------|--|
| BRO | FRP | REFUSE | 12-13-2023 | 0835 | 12-26-2023 | 1221 |

---

| Start | Stop | Pgm Status | Pgm Days |
|-------|------|------------|----------|
| 01-18-2024 | 07-30-2024 | accrue | 194 |

```
   Accrued Pgm Days...: 194
   Carry Over Pgm Days: 0
   Time Credit Factor.: 15
   Time Credits.......: 90
```

--- FSA Assessment --------------------------------------------------------------

| # | Start | Stop | Status | Risk Assignment | Risk Asn Start | | Factor |
|---|-------|------|--------|-----------------|------------|------|--------|
| 001 | 01-07-2020 | 02-04-2020 | ACTUAL | FSA R-LW | 04-28-2021 | 1707 | 10 |
| 002 | 02-04-2020 | 08-02-2020 | ACTUAL | FSA R-LW | 04-28-2021 | 1707 | 10 |
| 003 | 08-02-2020 | 01-29-2021 | ACTUAL | FSA R-LW | 04-28-2021 | 1707 | 15 |
| 004 | 01-29-2021 | 07-28-2021 | ACTUAL | FSA R-LW | 04-28-2021 | 1707 | 15 |
| 005 | 07-28-2021 | 01-24-2022 | ACTUAL | FSA R-LW | 04-28-2021 | 1707 | 15 |
| 006 | 01-24-2022 | 07-23-2022 | ACTUAL | FSA R-LW | 01-18-2022 | 1358 | 15 |
| 007 | 07-23-2022 | 01-19-2023 | ACTUAL | FSA R-LW | 04-27-2022 | 1228 | 15 |
| 008 | 01-19-2023 | 07-18-2023 | ACTUAL | FSA R-LW | 10-13-2022 | 0933 | 15 |
| 009 | 07-18-2023 | 01-14-2024 | ACTUAL | FSA R-LW | 04-10-2023 | 1211 | 15 |
| 010 | 01-14-2024 | 07-12-2024 | ACTUAL | FSA R-LW | 10-02-2023 | 0806 | 15 |
| 011 | 07-12-2024 | 01-08-2025 | ACTUAL | FSA R-LW | 02-18-2024 | 0719 | 15 |



## Individualized Reentry Plan - Initial Classification (Inmate Copy)

Dept. of Justice / Federal Bureau of Prisons

Plan is for inmate: ALONGE, OLU VICTOR 71545-019

SEQUENCE: 02195702
Team Date: 01-23-2020

| | | |
|---|---|---|
| Facility: | DRJ D. RAY JAMES CORR FACL CI | Proj. Rel. Date: 10-06-2026 |
| Name: | ALONGE, OLU VICTOR | Proj. Rel. Mthd: GCT REL |
| Register No.: | 71545-019 | DNA Status: ATL14733 / 12-20-2019 |
| Age: | 36 | |
| Date of Birth: | 12-03-1983 | |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| POSSIBLE DEPORTATION | null |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| DRJ | UNTL ATEAM | UNIT ORDERLIES A TEAM 6-11:00 | 03-01-2020 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| DRJ | ESL HAS | ENGLISH PROFICIENT | 01-10-2020 |
| DRJ | GED XN | EXEMPT GED NON-PROMOTABLE | 01-10-2020 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| DRJ | C | A&O PREA COMP.EDU.CLASS TU 10A | 01-13-2020 | 01-13-2020 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| SCRN1 | CCM: HEALTHY/SIMPLE CARE | 12-06-2019 |
| SCRN2-MH | SCRN2-MENTAL HEALTH | 12-06-2019 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| LOWER BUNK | LOWER BUNK REQUIRED | 01-15-2020 |
| REG DUTY W | REGULAR DUTY W/MED RESTRICTION | 01-15-2020 |
| YES F/S | CLEARED FOR FOOD SERVICE | 01-15-2020 |

### Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| ED WAIT HX | DRUG EDUCATION WAIT-RQ HIST | 01-15-2020 |

### FRP Details

Most Recent Payment Plan

| | | | | |
|---|---|---|---|---|
| FRP Assignment: | PART | FINANC RESP-PARTICIPATES | | Start: 01-21-2020 |
| Inmate Decision: | AGREED | $25.00 | Frequency: QUARTERLY | |
| Payments past 6 months: | $0.00 | | Obligation Balance: $1,835,379.00 | |

#### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $100.00 | IMMEDIATE | AGREED |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |
| 2 | REST FV | $1,835,279.00 | $1,835,279.00 | IMMEDIATE | AGREED |
| | | ** NO ADJUSTMENTS MADE IN LAST 6 MONTHS ** | | | |

### Payment Details

| | |
|---|---|
| Trust Fund Deposits - Past 6 months: $705.00 | Payments commensurate ?   Y |
| New Payment Plan: | ** No data ** |

### Progress since last review



# Individualized Reentry Plan - Program Review  (Inmate Copy)
### Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: ALONGE, OLU VICTOR  71545-019

SEQUENCE: 02195702
Team Date: 07-02-2020

| | | |
|---|---|---|
| Facility: | DRJ  D. RAY JAMES CORR FACL CI | Proj. Rel. Date:  10-06-2026 |
| Name: | ALONGE, OLU VICTOR | Proj. Rel. Mthd:  GCT REL |
| Register No.: | 71545-019 | DNA Status:  ATL14733 / 12-20-2019 |
| Age: | 36 | |
| Date of Birth: | 12-03-1983 | |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| POSSIBLE DEPORTATION | null |

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| DRJ | UNTL ATEAM | UNIT ORDERLIES A TEAM 6-11:00 | 03-01-2020 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| DRJ | ESL HAS | ENGLISH PROFICIENT | 01-10-2020 |
| DRJ | GED XN | EXEMPT GED NON-PROMOTABLE | 01-10-2020 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| DRJ | C | A&O PREA COMP.EDU.CLASS TU 10A | 01-13-2020 | 01-13-2020 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS **

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| SCRN1 | CCM: HEALTHY/SIMPLE CARE | 12-06-2019 |
| SCRN2-MH | SCRN2-MENTAL HEALTH | 12-06-2019 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| LOWER BUNK | LOWER BUNK REQUIRED | 01-15-2020 |
| REG DUTY W | REGULAR DUTY W/MED RESTRICTION | 01-15-2020 |
| YES F/S | CLEARED FOR FOOD SERVICE | 01-15-2020 |

## Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| ED WAIT HX | DRUG EDUCATION WAIT-RQ HIST | 01-15-2020 |

## FRP Details

Most Recent Payment Plan

**FRP Assignment:**   **PART**   **FINANC RESP-PARTICIPATES**   Start: 01-21-2020

Inmate Decision:   **AGREED**   **$25.00**   Frequency: **QUARTERLY**

Payments past 6 months:   **$25.00**   Obligation Balance: **$1,835,354.00**

### Financial Obligations

| No. | Type | Amount | | Balance | Payable | | Status | |
|---|---|---|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | | $75.00 | IMMEDIATE | | AGREED | |
| | | Adjustments: | Date Added | Facl | Adjust Type | Reason | | Amount |
| | | | 06-14-2020 | DRJ | PAYMENT | MANUAL | | $25.00 |
| 2 | REST FV | $1,835,279.00 | | $1,835,279.00 | IMMEDIATE | | AGREED | |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

## Payment Details

| Trust Fund Deposits - Past 6 months: $3,276.00 | Payments commensurate ?  Y |
|---|---|
| New Payment Plan: | ** No data ** |

# EXHIBIT E

President Joe Biden's Executive Order 14074 of May 25, 2022 with regards to the First Step Act.

experiencing homelessness or living in poverty. It calls for improving and clarifying standards for police activities such as the execution of search warrants and the use of force.

Many law enforcement agencies across the country—including at the Federal, State, Tribal, local, and territorial level—have already undertaken important efforts to modernize policing and make our broader criminal justice system more effective and more equitable. Their work has inspired many of the provisions of this order. These agencies—and the officers who serve within them—deserve recognition for their leadership and appreciation for setting a standard that others can follow. This order seeks to recognize these key reforms and implement them consistently across Federal law enforcement agencies. Through this order, the Federal Government will also seek to provide State, Tribal, local, and territorial law enforcement agencies with the guidance and support they need to advance their own efforts to strengthen public trust and improve public safety.

It is also the policy of my Administration to ensure that conditions of confinement are safe and humane, and that those who are incarcerated are not subjected to unnecessary or excessive uses of force, are free from prolonged segregation, and have access to quality health care, including substance use disorder care and mental health care. We must provide people who are incarcerated with meaningful opportunities for rehabilitation and the tools and support they need to transition successfully back to society. Individuals who have been involved in the criminal justice system face many barriers in transitioning back into society, including limited access to housing, public benefits, health care, trauma-informed services and support, education, nutrition, employment and occupational licensing, credit, the ballot, and other critical opportunities. Lowering barriers to reentry is essential to reducing recidivism and reducing crime.

Finally, no one should be required to serve an excessive prison sentence. When the Congress passed the **First Step Act** of 2018 (Public Law 115-391), it sought to relieve people from unfair and unduly harsh sentences, including those driven by harsh mandatory minimums and the unjust sentencing disparity between crack and powder cocaine offenses. My Administration will fully implement the **First Step Act**, including by supporting sentencing reductions in appropriate cases and by allowing eligible incarcerated people to participate in recidivism reduction programming and earn time credits.

2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

JOSEPH R. BIDEN, JR.

**Executive Order 14074 of May 25, 2022 — Advancing Effective, Accountable Policing and Criminal Justice Practices To Enhance Public Trust and Public Safety**

By the authority vested in me as President by the Constitution and the laws of the United States of America, I hereby order as follows:

**Section 1.** Policy. Our criminal justice system must respect the dignity and rights of all persons and adhere to our fundamental obligation to ensure fair and impartial justice for all. This is imperative—not only to live up to our principles as a Nation, but also to build secure, safe, and healthy communities. Protecting public safety requires close partnerships between law enforcement and the communities it serves. Public safety therefore depends on public trust, and public trust in turn requires that our criminal justice system as a whole embodies fair and equal treatment, transparency, and accountability.

Law enforcement officers are often a person's first point of contact with our criminal justice system, and we depend on them to uphold these principles while doing the demanding and often life-threatening work of keeping us safe. We expect them to help prevent and solve crimes and frequently call upon them to respond to social problems outside their expertise and beyond their intended role, diverting attention from their critical public safety mission and increasing the risks of an already dangerous job—which has led to the deaths of law enforcement officers and civilians alike. The vast majority of law enforcement officers do these difficult jobs with honor and integrity, and they work diligently to uphold the law and preserve the public's trust.

Yet, there are places in America today, particularly in Black and Brown communities and other communities of color, where the bonds of trust are frayed or broken. We have collectively mourned following law enforcement encounters that have tragically ended in the loss of life. To heal as a Nation, we must acknowledge that those fatal encounters have disparately impacted Black and Brown people and other people of color. The pain of the families of those who have been killed is magnified when expectations for accountability go unmet, and the echoes of their losses reverberate across generations. More broadly, numerous aspects of our criminal justice system are still shaped by race or ethnicity. It is time that we acknowledge the legacy of systemic racism in our criminal justice system and work together to eliminate the racial disparities that endure to this day. Doing so serves all Americans.

Through this order, my Administration is taking a critical step in what must be part of a larger effort to strengthen our democracy and advance the principles of equality and dignity. While we

CFR1                                              1

2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

can make policing safer and more effective by strengthening trust between law enforcement officers and the communities they serve, we must also reform our broader criminal justice system so that it protects and serves all people equally. To be clear, certain obstacles to lasting reform require legislative solutions. In particular, system-wide change requires funding and support that only the Congress can authorize. But my Administration will use its full authority to take action, including through the implementation of this order, to build and sustain fairness and accountability throughout the criminal justice system.

The need for such action could not be more urgent. Since early 2020, communities around the country have faced rising rates of violent crime, requiring law enforcement engagement at a time when law enforcement agencies are already confronting the challenges of staffing shortages and low morale. Strengthening community trust is more critical now than ever, as a community's cooperation with the police to report crimes and assist investigations is essential for deterring violence and holding perpetrators accountable. Reinforcing the partnership between law enforcement and communities is imperative for combating crime and achieving lasting public safety.

It is therefore the policy of my Administration to increase public trust and enhance public safety and security by encouraging equitable and community-oriented policing. We must commit to new practices in law enforcement recruitment, hiring, promotion, and retention, as well as training, oversight, and accountability. Insufficient resources, including those dedicated to support officer wellness—needed more than ever as officers confront rising crime and the effects of the coronavirus disease 2019 (COVID-19) pandemic—jeopardize the law enforcement community's ability to build and retain a highly qualified and diverse professional workforce. We must work together to ensure that law enforcement agencies have the resources they need as well as the capacity to attract, hire, and retain the best personnel, including resources to institute screening mechanisms to identify unqualified applicants and to support officers in meeting the stresses and challenges of the job. We must also ensure that law enforcement agencies reflect the communities they serve, protect all community members equally, and offer comprehensive training and development opportunities to line officers and supervisors alike.

Building trust between law enforcement agencies and the communities they are sworn to protect and serve also requires accountability for misconduct and transparency through data collection and public reporting. It requires proactive measures to prevent profiling based on actual or perceived race, ethnicity, national origin, religion, sex (including sexual orientation and gender identity), or disability, including by ensuring that new law enforcement technologies do not exacerbate disparities based on these characteristics. It includes ending discriminatory pretextual stops and offering support for evidence-informed, innovative responses to people with substance use disorders; people with mental health needs; veterans; people with disabilities; vulnerable youth; people who are victims of domestic violence, sexual assault, or trafficking; and people

CFR1                                        2

2023 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

71545019

CERTIFIED MAIL

7020 2450 0000 6490 1075

VICTOR OLU ALONGE
71545019
FCI MEDIUM VICTORVILLE II
P.O. BOX 3850
ADELANTO, CA
92301



RECEIVED
CLERK, U.S. DISTRICT COURT

AUG 16 2024

CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION
BY _____ DEPUTY

UNITED STATES DISTRICT COURT
GEORGE E. BROWN, JR. FEDERAL
BUILDING, & US COURT HOUSE
3470 TWELFTH STREET
ROOM 134
RIVERSIDE, CA 92501



